AO-106 (Rev: 06/09)-Application for Search Warrant

# FILED

## UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

MAR 1 5 2024

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| In the Matter of the Search of | ) |
|---|---|
| *Information Associated with Instagram Account and* | ) |
| *Instagram username "berryman_austin" and* | ) |
| *"leslielane01" that is Stored at a Premises Controlled by* | ) |
| *Meta Platforms, Inc.* | ) |

Case No. 24-MJ-169-JFJ

**FILED UNDER SEAL**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A." This court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).
located in the  Northern  District of  California , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1151, 1153, and 2241(a) | Aggravated Sexual Abuse by Force and Threat in Indian Country |
| 18 U.S.C. § 1151, 1153, and 113(a)(8) | Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country |

The application is based on these facts:
See Affidavit of SA Caitlen Dalton, attached hereto.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Caitlen Dalton, FBI
*Printed name and title*

Subscribed and sworn to by phone.

Date:  3/15/24

City and state:  Tulsa, Oklahoma

_____
*Judge's signature*

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of
Information Associated with Instagram
Account and Instagram username          Case No.
"berryman_austin" and "leslielane01"
that is Stored at a Premises Controlled
by Meta Platforms, Inc.

### Affidavit in Support of an Application for a Search Warrant

I, Caitlen Dalton, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for information associated with the Instagram usernames **"berryman_austin"** and **"leslielane01"** that is stored at a premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1 Meta Way in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government information (including the content of communications) in its possession, pertaining to the subscribers or customers associated with the Instagram usernames **"berryman_austin"** and **"leslielane01"** as further described in Section I of Attachment B. Upon receipt of the information

described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2022. I am currently assigned to the Oklahoma City Field Office, Tulsa Resident Agency. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country, to include violations relating to Title 18 United States Code, Sections 1151, 1153, and 2241(a) (Aggravated Sexual Abuse by Force and Threat in Indian Country), and Title 18 United States Code Sections 1151, 1153, and 113(a)(8) (Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country).

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application

2

for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5.  Based on my training, research, experience, and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 1151, 1153, and 2241(a) (Aggravated Sexual Abuse by Force and Threat in Indian Country), and 18 U.S.C. §§1151, 1153, and 113(a)(8) (Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country) exists and is associated with the Meta Platforms, Inc. accounts described in Attachment A.

## Jurisdiction

6.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7.  When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Meta from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## Instagram Background

8.      Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

9.      Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

10.      Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

11.      Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users

4

can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

12.    Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

13.    Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

14. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

15. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

16. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

17. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can

6

"mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

18.    An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

19.    Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

20.    Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and

if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

21.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

22.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

23.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

24.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences,

interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

25.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

26.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

27.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

28.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.

9

Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

29.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

30.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of

10

guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31.     Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, this information may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

32.     Therefore, Meta's servers are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Instagram to facilitate and communicate about the crime under investigation.

### Probable Cause

33. DENZIL AUSTIN BERRYMAN and L.H. met and began dating during the fall of 2022.

34. On the evening of June 18, 2023, BERRYMAN went to L.H.'s condo. Shortly after BERRYMAN entered L.H.'s condo, a fight ensured because BERRYMAN spotted a bag of candy that L.H. had received from a male coworker. BERRYMAN started slapping L.H., pulling her hair, and shoving the candy down her throat. L.H. ran into the bedroom to get away from BERRYMAN and begged

11

him to leave, but BERRYMAN punched the bedroom door and forced his way in. L.H. told BERRYMAN that she was calling the cops if he didn't leave. BERRYMAN told L.H. tried to take the phone from L.H. as she was dialing 911.

35. When police arrived at the apartment complex, they were unable to get beyond the outdoor apartment complex vehicle gate due to a downed tree, from a storm the night before, that was blocking the entrance to the complex. L.H. and BERRYMAN met the officers at the gate. L.H. told the police that she wanted BERRYMAN to leave. BERRYMAN told officers he couldn't leave without his cellphone, which he claimed was still located inside L.H.'s apartment. Police asked L.H. to go locate the phone in her apartment so he could leave.

36. L.H. went back to the apartment to search for BERRYMAN's phone, while BERRYMAN and the officers stayed outside. L.H. was unable to locate BERRYMAN's phone in the apartment and began calling it multiple times while BERRYMAN was still with the officers. While L.H. was still inside, BERRYMAN located his phone inside his backpack, and told police he intended to order an Uber and leave. While BERRYMAN was still at the apartment complex, all of the officers left the scene without notifying L.H. L.H. returned to the gate a few minutes later with the intent of notifying police she was unable to locate BERRYMAN's phone. Instead, when she exited the gate, she observed that BERRYMAN was still there, but all the police had left. L.H. stated that when she returned to the security gate to see that the police had left, she felt shocked and scared. L.H. stated she did not

12

remember much of the interaction with BERRYMAN but recalls him apologizing and him returning back to the apartment with her.

37. Once back inside the apartment, BERRYMAN immediately became very angry again that L.H. called the Police on him. BERRYMAN pushed L.H. down on the end of her bed and pulled off her pants and underwear. BERRYMAN began forcibly trying to perform oral sex on her and biting her. L.H. told BERRYMAN to stop and attempted to fight him off by kicking and hitting him. BERRYMAN told L.H. to "shut up," and held down her thighs and ankles. BERRYMAN told her to "be quiet" and "you want this". BERRYMAN pulled L.H. back onto the bed with his hands on her throat, strangling her. At this point, L.H. lost consciousness. When L.H. woke up, she realized BERRYMAN had moved her onto her stomach and inserted his penis inside her vagina. BERRYMAN subsequently ejaculated inside her and fell asleep.

38. L.H. woke BERRYMAN up the next morning at 6:00 am and tried to get him to leave. L.H. ordered an uber for BERRYMAN, but he canceled it. BERRYMAN finally consented to leaving when L.H. said she would drive him home. BERRYMAN walked with L.H. downstairs, but as soon as he stepped through the pedestrian gate, L.H. returned to her apartment.

39. On June 19, 2023, L.H.'s condo was located at 450 W 7th Street Apt #1509, Tulsa, Oklahoma 74119. This residence is located within in the Northern District of Oklahoma and within the boundaries of the Muscogee Creek Nation.

40. BERRYMAN is an enrolled member by blood of the Choctaw Nation.

41. On July 18, 2023, BERRYMAN was interviewed by Tulsa Police Detective Michelle Jackson. BERRYMAN was advised and waived his Miranda rights. During his interview, BERRYMAN admitted to having sex with L.H., but claimed the injuries were the result of consensual encounter. BERRYMAN further claimed that L.H. bruises easily and had previously sent photos of injuries she'd received from prior consensual sexual encounters. BERRYMAN further claimed that they frequently engaged in rough sex, and that her safe word was pineapple. BERRYMAN told Det. Jackson that he had proof of these conversations in his phone but was unable to locate any photos or conversations. Further, BERRYMAN admitted to being upset. However, he claimed he tried to remove himself from the situation by ordering an Uber ride, but that L.H. canceled the ride request he'd made on his phone.

42. On July 18, 2023, Det. Jackson spoke with L.H. who denied ever previously establishing a safe word.

43. L.H. sent Det. Jackson screen shots of a conversation between herself and an Instagram account she claimed belonged to BERRYMAN that took place on June 20, 2023. The Instagram username was **"berryman_austin."** During the conversation L.H. and BERRYMAN discuss the events that occurred on June 19, 2023.

14



44. L.H.'s instagram username is "**leslielane01.**"

45. Charges were initially filed in Tulsa County District Court, but subsequently dismissed after BERRYMAN filed a McGirt Motion. On November 7, 2023, a Grand Jury sitting in the Northern District of Oklahoma, found probable cause to indict BERRYMAN for Aggravated Sexual Abuse by Force and Threat in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 2241(a) (Count One) and Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(8).

### Information to be Searched and Things to be Seized

46.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it,

reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

47.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

48. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crimes under investigation, including but not limited to undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover,

16

even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

### Conclusion

49. Based on the information above, I submit that there is probable cause to believe that there is evidence of violations of 18 U.S.C. §§ 1151, 1153, and 2241(a) (Aggravated Sexual Abuse by Force and Threat in Indian Country), and 18 U.S.C. §§1151, 1153, and 113(a)(8) (Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country) associated with the Meta Platforms, Inc. accounts described in Attachment A.

50. I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Caitlen Dalton
Special Agent
FBI

Subscribed and sworn to by phone on March \_\_\_\_ 15th, 2024.

JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Instagram accounts "berryman_austin" and "leslielane01", that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A. All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.     Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.     Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.     All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.     Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from May 1, 2023, to July 1, 2023.

7.     Privacy and account settings, including change history; and

8.     Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from May 1, 2023 July 1, 2023.

2

C. All content, records, and other information relating to communications sent from or received by the Account from May 1, 2023, to July 1, 2023, including but not limited to:

1.  The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.  All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.  All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.  All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the Account and other Instagram users from May 1, 2023, to July 1, 2023, including but not limited to:

1. Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account from May 1, 2023, to July 1, 2023.

F. All location information, including location history, login activity, information geotags, and related metadata from May 1, 2023, to July 1, 2023.

G. Meta is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

II.     **Information to be searched for and seized by the government.**

All information described above in Section I that constitutes evidence, instrumentalities, contraband, and/or fruits of violations of Title 18 United States Code Sections 1151, 1153, and 2241(a) (Aggravated Sexual Abuse by Force and Threat in Indian Country), and 18 U.S.C. §§1151, 1153, and 113(a)(8) (Assault of an Intimate/Dating Partner by Strangling and Suffocating in Indian Country), including, for each account or identifier listed on Attachment A:

   a. Information, correspondence, records, documents, or other materials pertaining to the crime under investigation and to the Instagram account owner;

   b. Communications between BERRYMAN and the victim L.H.

   c. Evidence indicating how and when the Instagram account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

   d. Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

   e. The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

### Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta") and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **gigabytes** associated with the Instagram usernames "**berryman_austin**" and "**leslielane01**". I further state that:

    a.    All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

    b.    Such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

        1.    The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.    The process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
   Date                              Signature

2